**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| **LESLIE R. VETTER,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 8:16-cv-02833-PWG** |
| **AMERICAN AIRLINES, INC. PILOT LONG-TERM DISABILITY PLAN,** | |
| **Defendant.** | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56 and Local Rule 105.2.c, Defendant American Airlines, Inc. Pilot Long-Term Disability Plan ("Defendant") respectfully moves this Court for an Order granting summary judgment in its favor on all claims brought by Plaintiff Leslie R. Vetter ("Plaintiff"). This motion is made for the reasons set forth in the attached memorandum of law, which also serves as Defendant's opposition to Plaintiff' own motion for summary judgment. (Dkt. #23).

Dated:     August 31, 2017

Respectfully submitted,

**LITTLER MENDELSON, P.C.**


*/s/ Daniel W. Srsic*
Daniel W. Srsic  (OH #0064177)
    (admitted *pro hac vice* 01/05/2017)
21 East State Street, 16th Floor
Columbus, OH  43215
Telephone:     614.463.4213
Facsimile:     614.573.9812
E-mail:     dsrsic@littler.com

S. Libby Henninger  (Fed. Bar No. 17389)
815 Connecticut Avenue, N.W., Suite 400
Washington, DC  20006
Telephone:       202.772.2527
Facsimile:        202.315.3345
E-mail:            lhenninger@littler.com

*Counsel for Defendant American Airlines,*
  *Inc. Pilot Long-Term Disability Plan*

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

Plaintiff brought this action pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1132 ("ERISA") to challenge the Plan Administrator's decision denying her long term disability ("LTD") benefits beyond July 23, 2012.[1]    Although the Pension Benefits Administration Committee ("PBAC") found Plaintiff was entitled to LTD benefits from May 3, 2012 through July 23, 2012, it concluded that she no longer satisfied the requirements of the American Airlines, Inc. Pilot Long Term Disability Plan (the "Plan") beyond that time.   The PBAC's decision was made after reviewing the Plaintiff's entire claims file and relying on the opinion of independent medical reviewers, mutually agreed upon with Plaintiff's union representative, the American and the Allied Pilots Association ("APA").   The expert medical reviewers considered the records from Plaintiff's treating physicians and the opinions of four reviewing specialists were coordinated through a physician Board-certified in Preventive/ Occupational Medicine, with a sub-specialty certificate in Aerospace Medicine and qualified as a Senior Aviation Medical Examiner.   The Administrator relied upon these opinions to conclude that Plaintiff's health was restored so that she was no longer prevented from active service for the Company.   In other words, Plaintiff was no longer "disabled" as that term is defined under the terms of the Plan.

---

[1]    Plaintiff is currently working as an "Active Pilot Employee" as defined by the long-term disability plan in question, and is therefore no longer "Disabled" under the terms of the plan. Because she returned to work as an Active Pilot Employee, this case involves a closed period of alleged disability from July 23, 2012 through the date of her return to work as an Active Pilot Employee.

The Plan is entitled to summary judgment as a matter of law because the Plan Administrator had authority to interpret and administer the long term disability plan and there is substantial evidence in the administrative record that supports the decision denying Plaintiff continued LTD benefits beyond July 23, 2012.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff began employment with American Eagle Airlines as a pilot on April 4, 1994. (AR-0060).  She remained with American Eagle Airlines until she left and was reemployed by American Airlines, Inc. on February 2, 2011.  *Id.*  She submitted a claim for LTD benefits after working through January 24, 2012 and taking vacation and sick pay through February 21, 2012. (AR-0118)  Plaintiff's claim for benefits is governed by the terms of the Plan.

### A.    The LTD Plan

American Airlines, Inc. ("American" or "the Company") sponsors a comprehensive long term disability program for its eligible pilots, called the American Airlines, Inc. Pilot Long Term Disability Plan (the "Plan"), which is governed by ERISA.  (AR-0130-0157).  The American Airlines, Inc. Pension Benefits Administration Committee ("PBAC") is the Administrator for the purpose of deciding pilot disability benefit claim appeals.  (AR-0142).  The PBAC's role is described in the Plan as follows:

> **(4)    Powers of the Pension Benefits Administration Committee.**    The Pension Benefits Administration Committee shall have the following powers and duties:
>
> (a)    To determine all questions concerning the rights of Pilot Employees under the Plan, which decisions shall be final and binding upon the Employer, unless arbitrary and capricious;
>
> (b)    To exercise discretionary authority to determine eligibility for benefits and to continue the terms of the Plan;

      (c)     To amend the Plan as deemed necessary or appropriate by the Pension Benefits Administration Committee to comply with applicable laws, the Agreement and to further the objectives of the Plan;

      (d)     To adopt such rules, forms and procedures as may be necessary for the administration of the Plan in accordance with their terms and the terms of any applicable law;

      (e)     To review and render decisions respecting a claim for (or denial of a claim for) a benefit under the Plan in accordance with the claims procedure described in Section VIII of this Plan.

\* \* \*

(AR-0142-0143). The Plan separately confirms that the PBAC's decisions are intended to be final and that "[n]o benefit shall be payable under the Plan, unless the PBAC determines in its sole discretion that such benefit is payable under the terms of the Plan." (AR-0149).

The purpose of the Plan itself is to replace a portion of an eligible pilot's compensation when she is unable to work as a result of a "Disability" as defined by the Plan as "an illness or injury, verified through a qualified medical authority in accordance with Section V of the Plan, which prevents a Pilot Employee from continuing to act as an Active Pilot Employee in the Service of the Employer…. (AR-0135-0136). Additional relevant Plan language is as follows:

### III.  DEFINITIONS

For purposes of this Plan, the following definitions shall apply, unless the context clearly indicates otherwise. These defined terms are capitalized throughout this document to indicate their special meaning within the context of the Plan:

      A.     "**Active Pilot Employee**" means a Pilot Employee who performs or is eligible to perform duties as a pilot for the Company. An Active Pilot Employee will include a Pilot Employee who is receiving Compensation from an Employer or the Association for periods during an Authorized Leave of Absence.

(AR-0133).

N. "**Disability**" or "**Disabled**" means an illness or injury, verified through a qualified medical authority in accordance with Section V of the Plan, which prevents a Pilot Employee from continuing to act as an Active Pilot Employee in the Service of the Employer, other than:

\* \* \*

X. "**Pension Benefit Administration Committee**" or "**PBAC**" means the committee whose members are appointed to and which have the responsibilities specified in Section VII of the Plan.

Y. "**Pilot Employee**" means an Employee on the Pilot System Seniority List of the Company for such period or periods that he is on such list.  Pilot Employee will include an individual permitted to participate in the Plan as provided under the Agreements.

(AR-0135-0137).

## V. DISABILITY BENEFIT ELIGIBILITY

\* \* \*

B. A Pilot Employee's Disability will be considered to cease to exist if (1) health is restored so as not to prevent the Pilot Employee from acting as an Active Pilot Employee in the service of the Company, (2) verification of such Disability can no longer be established or (3) appropriate medical care is wantonly disregarded by such Pilot Employee;

C. Verification of a Pilot Employee's Disability shall be established by the corporate medical director of the Company (the "Corporate Medical Director") through claims procedures agreed to between the Company and the Association.  Any Disability may be subject to re-verification, when appropriate, every ninety (90 days);

D. Any dispute as to the clinical validity of a Pilot Employee's claim of the existence of a Disability or the continuation of the illness or injury which gave rise to such Disability shall be referred to a clinical authority selected under the Agreements, and the findings of such authority regarding the nature and extent of such illness or injury shall be final and binding upon the Company, the Association and the Pilot Employee and his Beneficiaries.

(AR-0138).

4

VI.    **DETERMINING    THE    DISABILITY    BENEFIT AMOUNT**

\* \* \*

E.    When Disability Benefits End or Are Suspended Disability benefits end on the earlier of:

(1)    The date the Disability ceases,

(2)    The payment of the maximum number of payments as stated in Section V,

(3)    The commencement a "Retirement Benefit" under the Program;

(4)    Normal Retirement Date; or

(5)    Death.

(AR-0140).

B.    **Plaintiff's Claim For LTD Benefits**

Plaintiff applied for LTD benefits in April of 2012.  (AR-0118).  She supported the disability claim with limited medical records, suggesting that her condition had not yet been determined.  These included, the July 11, 2011 letter of Dr. Brian Turrisi, a pulmonologist and sleep specialist who reported he was "not the actual treating physician at this point, but [was acting as] the treating coordinator."  (AR-0001).  Dr. Turrisi explained that Plaintiff "began to develop nonspecific symptoms of fatigue, inability to concentrate, abdominal complaints and a general feeling of well-being that threatened her safety in the cockpit . . ."  *Id.*  At the time, his belief was that it was a "bacterial overgrowth syndrome of the bowel that seem[ed] to be the predominant continuing symptom . . ."  *Id.*  Coordinating Plaintiff's submission of evidence to support her LTD claim, Dr. Turrisi provided a "summary of the entire workup," consisting of thirty-seven pages of records.  (AR-0001-0036).

Included with Dr. Turrisi's letter was a report prepared for him by gastroenterologist Dr. William Stern.  (AR-0003-0006).  Dr. Stern examined Plaintiff on June 21, 2012 (more than

5

four months after she stopped working). *Id.* The history taken by Dr. Stern reports that "no definite diagnosis has been made" and that testosterone and thyroid replacement treatments did not result in significant improvement. (AR-0004). Some gastro-intestinal symptoms were noted. *Id.* After examination, however, his impression remained non-specific as "multi-system disorder – encompassing multiple complaints and problems . . .," along with irritable bowel syndrome and a small intestinal bacterial overgrowth." (AR-0005). His recommendations were to review all prior lab work and, essentially, to keep looking for the problem. (AR-0006).

Dr. Turrisi also sent in the June 6, 2012 letter of endocrinologist Dr. Marina Johnson (which was also received separately). (AR-0007, 0037). Dr. Johnson reported that she was treating Plaintiff for hypothyroidism, perimenopause, chronic insomnia and IBS-C (irritable bowel syndrome with constipation). *Id.* However, she explained that although Plaintiff initially "could not fly until her thyroid medication and dosage was approved," Plaintiff's "thyroid medicine and dosage is now stabilized and does not constitute a reason to prevent her from flying." *Id.* Dr. Johnson reported that in January 2012, Plaintiff had "severe insomnia (woke up 5-6 times during 8 hours of sleep) that was causing her great fatigue," but that by the time of "her most recent visit of June 6, 2012, [Plaintiff's] sleep [was] now normalized." *Id.* As such, the endocrinologist explained that "the problem that is inhibiting her return to work is her [self-reported] epigastric and abdominal pain." *Id.*

Also included with Dr. Turrisi's submission on Plaintiff's behalf were laboratory results from May 18, June 6, June 25, and July 2, 2012. (AR-0008-0036). Neither Plaintiff's physicians, nor the physician review her records, found that these lab results include any significant findings. (AR-0001-0007, 0161).

In a letter dated July 31, 2012, Thomas Bettes, M.D., American's Corporate Medical Director, advised Plaintiff that her claim for benefits under the Plan was "denied due to there being insufficient evidence that you have a Disability as required by the Plan." (AR-0043-0046). He explained that Plaintiff "did not provide information to show the existence of a medical condition due to an illness or injury that `gives rise to a Disability." *Id.* Dr. Bettes summarized his review of the medical evidence as including reports of "non-specific symptoms principally related to an unspecified gastro-intestinal disorder." (AR-0045). Other than epi-gastric pain (pain in the upper abdomen), his review of the evidence suggested that Plaintiff's other relevant symptoms had resolved, including those related to sleep disorder and hypothyroidism. *Id.* He noted none of her physicians had identified a diagnosis or correlated Plaintiff's reported symptoms to the couple of positive anti-bodies in her blood work. *Id.* Dr. Bettes found that Plaintiff "did not provide information to show the existence of a medical condition due to an illness or injury that gives rise to a Disability." (AR-0043).

On January 21, 2013, Plaintiff submitted her written appeal to the PBAC, which the PBAC received on February 1, 2013. (AR-0122-0123). With the assistance of her union, Plaintiff supported her appeal with both a declaration (AR-0164-0166) and additional evidence. (AR-0121-0667). In the appeal, Plaintiff explained that she "was ultimately diagnosed with Lyme Disease and related conditions." (AR-0122-0123). In order to reach that diagnosis, Plaintiff reported that she had "seen nearly a dozen healthcare providers, including specialists in gynecology, endocrinology, internal medicine, oncology, hematology, surgery, physical medicine and rehabilitation, sleep medicine, pulmonology, infectious disease, aerospace medicine, and gastroenterology." (AR-0164). Plaintiff blamed the lack of earlier identification and treatment of Lyme disease for the time it took for her to return to work. (AR-0166).

The medical evidence submitted with Plaintiff's appeal included records from James L. Schaller, M.D. (AR-0179-0185, 0244-0264); Lynette H. Posorske, M.D. (AR-0602-0609); David B. Kessler, M.D. (AR-0611); Paula A. Corrigan, M.D. (AR-0614); Brian C. Turrisi, M.D. (AR-0511-0519); William R. Stern, M.D. (AR-0553-0600); and, Marina Johnson, M.D. (AR-0429-0510). Of these, only Drs. Turrisi, Stern, and Johnson were seen before Plaintiff's initial claim for LTD benefits was denied.

Pursuant to Section V.D. of the Plan, before the PBAC may make its appeal determination, "[a]ny dispute as to the clinical validity of a Pilot Employee's claim of the existence of a Disability or the continuation of the illness or injury which gave rise to such Disability shall be referred to a clinical authority selected under the Agreements [between American and the Union]." (AR-0138). Pursuant to the collectively bargained arrangement, Plaintiff's claim materials were submitted to MES Solutions, an independent clinical consulting firm mutually agreed upon by American and the APA, for its review and medical opinions on the case. (AR-0090-0093). American requested that MES Solutions provide a "[p]eer review conducted by a Senior [Aviation Medical Examiner] and any additional board-certified physician specialists . . ." (AR-0090).

Although the review was to be led by a Senior Aviation Medical Examiner, it was a review focused on entitlement to LTD benefits and not an FAA medical certificate examination. As such, American explained:

> It should also be noted that this request for professional medical consultation is to determine disability and treatment compliance only, as referenced in the Plan. This request for medical consultation should not address the Pilot's fitness for duty, qualification or disqualification for FAA medical certificate for the Pilot, Pilot loss of license, or factors other than those contained in the questions stated below, as the Plan's determining factors for approval of disability benefits focus on whether or not the Pilot

> meets the Plan's definition of disability, and/or whether or not the
> Pilot meets the requirement of receiving and complying with
> qualified medical care (treatment compliance).

(AR-0091).   American's agreement with the Union called only for submission of issues with

respect to the clinical validity of a Pilot Employee's claim for disability benefits to be submitted

to the jointly selected clinical authority.  (AR-0138).

Following the process negotiated between American and Plaintiff's union, the PBAC

obtained a written peer review report prepared by Senior Aviation Medical Examiner, Dr. James

W. Butler in consultation with four additional medical specialists.   (AR-0094-0111).   The

physicians reviewed Plaintiff's declaration and all of the medical evidence.  (AR-0094-0096).

Each of the four additional medical specialists addressed Plaintiff's evidence along with

Dr. Butler.

Neurologist and Sleep Specialist, Dr. Ronald Sims, assisted Dr. Butler in considering

whether Plaintiff was disabled by chronic insomnia and fatigue.  (AR-0103-0106).  Plaintiff's

reports of insomnia and sleep disturbance were considered from across all of her medical

records.  *Id.*  They concluded that the "medical evidence indicates that [Plaintiff] had persistent,

severe insomnia for many months, but eventually had improvement . . ." (AR-0105).  Although

there was some evidence insomnia and fatigue may have continued, Drs. Sims and Butler made

note of Plaintiff's report of improvement to Dr. Turrisi in July of 2012.  *Id.*  Before the reported

improvement, Plaintiff's insomnia diagnosis was corroborated by objective medical findings and

her own self-reports.  *Id.*  Drs. Sims and Butler agreed that Plaintiff was unable to function as

a flight officer during the period she was suffering from insomnia.  *Id.*

Internal Medicine and Infectious Disease specialist, Dr. Jad Khoury, assisted Dr. Butler

in considering Plaintiff's complaints of a thyroid disorder and blood test results that showed

positive for Epstein-Barr virus and Cytomegalovirus. (AR-0096-0100). They concluded that the medical records did not support disability based upon either of these conditions. *Id.*

Obstetrician and Gynocologist, Dr. Ronald Orleans, assisted Dr. Butler in considering Plaintiff's gynecologic records. (AR-0100-0102). Despite the earlier suggestion by Plaintiff's treating physicians, Drs. Orleans and Butler concluded that the medical records did not evidence that she was "perimenopausal" or had a "perimenopausal disorder." (AR-0101). In any event, there was no evidence Plaintiff was disabled due to a gynecological disorder. *Id.*

Internal Medicine and Gastroenterologist, Dr. Steven Talwil, assisted Dr. Butler in considering whether Plaintiff was disabled from abdominal pain and/or irritable bowel syndrome. (AR-0107-0111). They found that the diagnosis of irritable bowel syndrome with constipation was supported, but that it was not severe and was not disabling. (AR-0108). They also agreed that Plaintiff's complaints of abdominal pain were insufficient to support a disability claim. (AR-0110).

On August 12, 2013, based on review of Plaintiff's entire claims file, consisting of all the information she submitted in support of her appeal, along with all other information provided by American, American's Medical and Occupational Health Services, and MES Solutions, the PBAC issued its determination that allowed LTD benefits through July 23, 2012 and denied them thereafter. (AR-0057-0069). It explained:

> Of her multiple claimed conditions, the only condition that adversely affected her ability to perform her duties as a pilot was her insomnia and resulting daytime fatigue." With conservative treatment, her insomnia markedly improved by July 23, 2012. While she still experienced periodic episodes of insomnia after that time, the condition was self-limiting and responded to conservative treatment. Thus, her disability resulting from insomnia was no longer disabling after July 23, 2012.

(AR-0069).  The PBAC found Plaintiff "tested positive for exposure to [Lyme disease], she treated with oral antibiotic therapy, and that the infection persisted in March 2013," however, there was no evidence of involvement in the central nervous system.  (AR-0068).

## III.    ARGUMENT

### A.    STANDARD OF REVIEW

#### 1.    *The Arbitrary And Capricious Standard Applies.*

As she must, Plaintiff concedes that the arbitrary and capricious standard of review governs this Court's consideration of her claim for payment of additional LTD benefits in this case.  (Dkt. #23, p. 16).  The Supreme Court's decision in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) made this standard applicable in ERISA benefit claims cases where "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Id.*  The Court is required to play a "secondary rather than primary role in determining a claimant's right to benefits."  *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008).  As such, the Court does not look beyond the record that was before the administrator, nor substitute its own judgment for that of administrator made responsible for deciding whether claims under an ERISA plan are payable.  *Williams v. Metropolitan Life Insurance Co.*, 609 F.3d 622, 629-30 (4th Cir. 2010); *Voliva v. Seafarers Pension Plan*, 858 F.2d 195, 196 (4th Cir. 1988).

A "plan administrator's interpretation of the plan 'will not be disturbed if reasonable.'" *Conkright v. Frommert,* 130 S.Ct. 1640, 1651 (2010); *Williams v. Met. Life Ins. Co.*, 609 F.3d 622, 629-630 (4th Cir. 2010).  As such, the determination must be upheld "when it is the 'result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" *Vaughan v. Celanese Americas Corp.*, 339 Fed. App'x 320, 322 (4th Cir. 2009) (*quoting Brogan v. Holland*, 105 F.3d 158, 161 (4th Cir. 1997)).  A court may not "reverse merely because it

would have come to a different result in the first instance." *Evans*, 514 F.3d at 322; *Fortier v. Principal Life Ins. Co.*, 666 F.3d 231, 235 (4th Cir. 2012) (a court "must review only for abuse of discretion and ... must not disturb the ... decision if it is reasonable, even if the court itself would have reached a different conclusion").

### 2.    *The Burden Of Proof Rests With The Plaintiff*

Under the terms of the Plan, it is the Participant's responsibility to submit evidence, data or information as may be required by the Administrator.  (AR-0144-0146).  Courts have held that policy language requiring an insured to submit such proof places the burden of proof on the insured.  *See Cossio v. Life Ins. Co. of N. Am.*, 240 F.Supp.2d 388, 392 n.2 (D. Md. 2002); *see also Band v. Paul Revere Life Ins. Co.*, 14 Fed. App'x 210, 212 (4th Cir. 2001) (per curiam) ("The burden is on an insurance beneficiary to prove his or her total disability benefits under a Plan.").  In other words, it was not the administrator's responsibility to adduce evidence that Plaintiff is not disabled within the meaning of the LTD Policy, but Plaintiff's obligation to prove that she was disabled.  *See Realmuto v. Life Ins. Co. of N. Am.*, Civ. No. GLR-14-1386, 2015 WL 4528182, at *4 (D. Md. July 24, 2015) ("Contrary to [claimant's] supposition that [insurer] carries the burden of convincing the Court that there was a dramatic change in his condition, it is [claimant] that carries the burden of submitting enough objectively sufficient evidence that he is currently disabled as defined by the Plan.").  Plaintiff cannot satisfy her burden in this case.

### B.    THE DENIAL OF PLAINTIFF'S CLAIM FOR ADDITIONAL LTD BENEFITS WAS NOT ARBITRARY AND CAPRICIOUS

### 1.    *The Administrator's Decision Was The Result Of A Deliberate, Principled Reasoning Process*

The Administrator did not abuse its discretion by following the process required by the Plan, agreement with Plaintiff's union, and regulations issued by the Department of Labor ("DOL").  In the letter denying Plaintiff's claim for benefits, she was informed of her right to

submit an appeal to the PBAC.  (AR-0045).  With the assistance of her union, Plaintiff did so.

(AR-0121-0667).  At that point, the PBAC considered and decided Plaintiff's appeal according

to the requirements of the Plan and the DOL's regulations.

The Plan includes a description of procedures for reviewing a participant's appeal in the

manner required by DOL regulations.  (AR-0147-0148).  Because Plaintiff's claim required the

PBAC to make a decision based upon medical judgment, it was required to "consult with

a health care professional who has appropriate training and experience in the field of medicine

involved."  (AR-0148; 29 C.F.R. §§ 2560.503-1(h)(3)(iii), (h)(4)).  The Plan constrains the

PBAC's choice of medical consultants even further:

> Any dispute as to the clinical validity of a Pilot Employee's claim
> of the existence of a Disability or the continuation of the illness or
> injury which gave rise to such Disability shall be referred to
> a clinical authority selected under the Agreements, and the findings
> of such authority regarding the nature and extent of such illness or
> injury shall be final and binding upon the Company, the
> Association and the Pilot Employee and his Beneficiaries. The cost
> of referral of a dispute to a clinical authority pursuant to this
> paragraph, including the cost of all examinations or proceedings in
> connection therewith, shall be shared equally by the Company and
> the Association.

(AR-0138).[2]  Thus, the PBAC's decision to secure the opinion of Senior Medical Flight

Examiner Dr. Butler and the four additional medical specialists was the process required by both

the DOL's regulations, the Plan, and American's agreement with Plaintiff's union.

A plan's satisfaction of ERISA's "full and fair review" requirement must be "[i]n

accordance with the regulations of the Secretary. . . ."  29 U.S.C. § 1133.  Such regulations have

been adopted, requiring administrators to "*consult with a health care professional* when medical

---

[2]    "Agreement(s)" mean(s) a "bona fide" collective bargaining agreement or agreements
(within the meaning of section 7701 (a)(46) of the Code) between the [Allied Pilots] Association
and the Company.  (AR-0133).

judgment is at issue. 29 C.F.R. §§ 2560.503-1(h)(3)(iii), (h)(4) (emphasis added). Courts must defer to the standard established by the Department of Labor when evaluating whether an administrator's actions are arbitrary and capricious. *Massachusetts v. Morash*, 490 U.S. 107, 116-117 (1989). And, they must defer to the DOL's view that administrators consulting with an appropriately qualified health care professional in reviewing disability claims is an appropriate balance between "the interests of benefit claimants in having a full opportunity for an adequate review and the needs of employers and plans to limit the costs of providing such a review.". 65 Fed. Reg. 70252-70253 (November 21, 2000). The process followed by the PBAC was deliberate and principled because it satisfied the requirement to obtain expert medical opinion.

Courts have also found that the reliance on an independent medical authority, jointly selected and paid for by the Union, demonstrates that active steps have been taken to reduce any potential bias in the decision-making process. *Emery v. American Airlines, Inc.*, 56 F.Supp.3d 1284, 1291 (S.D. Fla. 2014); *Meadows v. American Airlines*, 2011 WL 1102774, (S.D. Fla. March 24, 2011), *aff'd* 520 Fed. App'x 787 (11th Cir. 2013). Such independent physicians are necessarily free of any conflict of interest. *See also DiCamillo v. Liberty Life Assur. Co.*, 287 F.Supp.2d 616, 624 (D. Md. 2003).

### 2.  *The Administrator's Decision Was Supported By Substantial Evidence*

The PBAC's decision cannot be overturned if it was the "result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Brogan*, 105 F.3d at 161. "Substantial evidence" is defined as "the quantum and quality of relevant evidence that is more than a scintilla but less than a preponderance and that 'a reasoning mind would accept as sufficient to support a particular conclusion.'" *Donnell v. Metro. Life Ins. Co.*, 165 Fed. App'x 288, 295 (4th Cir. 2006). As such, the Court may not reverse solely because it would have decided the claim differently. *Evans*, 514 F.3d at 322; *Fortier*, 666 F.3d at 235.

In this case, the PBAC considered all of Plaintiff's evidence, but relied primarily upon the opinions it obtained from Dr. Butler and the other experts with whom he consulted. (AR-0057-0069).   An administrator does not abuse its discretion by relying on the medical opinions of independent physicians who review medical records and the other submitted materials.  *See, e.g., Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 344 (4th Cir. 2000) (upholding a benefits determination where the administrator commissioned "reviews by independent doctors" and "considered all the records and letters" submitted by the plaintiff and her treating physicians).   As was explained above, consultation with reviewing physicians (even if not independent) is what the DOL determined was adequate to provide a disability benefits claimant with an adequate review.   65 Fed. Reg. 70252-70253 (November 21, 2000).

On appeal, Plaintiff attempted to support her claim for disability benefits with the diagnosis of Lyme's disease.   (AR-0164-0166).   The PBAC agreed that Plaintiff had tested positive for exposure to Lyme disease and took antibiotic treatments twice as a result. (AR-0068).   With responsibility for determining whether Plaintiff was disabled, however, identification of a diagnosis was not enough.   In considering Plaintiff's appeal, the PBAC asked that MES Solutions:

> Please review all documents enclosed (referencing the Pilot LTD definitions and provisions, as well as all other medical and claim information) and advise if this Pilot's claimed conditions met the requirements of Disability as defined by the Plan.

(AR-0091).   They asked further questions with respect to the conditions that might have been disabling.   (AR-0091-0093).   The only aspect of Lyme disease Plaintiff claims to have experienced, which may have been disabling was fatigue.   (Dkt. #23, pp. 20-21).

The PBAC specifically asked MES Solutions to consider the evidence of Plaintiff's alleged chronic insomnia and fatigue. (AR-0092). Drs. Butler and Sims reviewed all of Plaintiff's medical records to evaluate whether Plaintiff was disabled by chronic insomnia and fatigue. (AR-0103-0106). They concluded that the "medical evidence indicates that [Plaintiff] had persistent, severe insomnia for many months, but eventually had improvement . . ." (AR-0105). Drs. Sims and Butler noted Plaintiff's report of improvement to Dr. Turrisi on July 23, 2012 when her treating sleep specialist recorded that "she is sleeping a lot better now . . . and she is just now getting back to her normal sleep pattern." (AR-0533). Dr. Turrisi also recorded that Plaintiff was experiencing "[n]o insomnia, snoring, or excessive daytime sleepiness." (AR-0534). Plaintiff's treating endocrinologist reported that by "June 6, 2012, [Plaintiff's] sleep [was] now normalized." (AR-0037). Drs. Sims and Butler agreed that Plaintiff was unable to function as a flight officer during the period she was suffering from insomnia. (AR-0105). They pointed to Dr. Turrisi's July 23, 2012 notes (*id.*) and the PBAC paid benefits through this date, rather than a month earlier when Dr. Johnson reported her sleep had normalized. (AR-0052).

The PBAC's decision to award benefits through July 23, 2012 and deny them thereafter was supported by substantial evidence and must be affirmed.

### C.    Plaintiff's Arguments Are Without Merit

Pursuant to the Court's scheduling order, Plaintiff filed her motion for summary judgment on July 31, 2017. (Dkt. #23). It is no surprise that she does not agree that the decision to deny her claim for benefits beyond July 23, 2012 was the "result of a deliberate, principled reasoning process and if it is supported by substantial evidence." Plaintiff argues that the PBAC's decision should be found arbitrary and capricious, alleging that it failed to consider all of her conditions "taken together," failed to consider the whole record, and failed to afford her a full and fair review. *Id.*, pp. 17-25. These arguments do not withstand scrutiny.

1.      *Plaintiff's Arguments That Her Conditions Were Not Considered
        "Taken Together" Fail*

Plaintiff argues incorrectly that the PBAC improperly restricted the review conducted by MES Solutions. (Dkt. #23, pp. 17-19). She begins by suggesting that the PBAC improperly evaluated each of her conditions independently. The allegation is not true, since the Senior Aviation Medical Examiner, Dr. Butler, consulted with each of the four other medical specialists and signed off on each of their opinions. (AR-0094-0111). After participating in the review of all of Plaintiff's medical evidence, Plaintiff's reported insomnia and fatigue were found to be disabling (though only until July 23, 2012). (AR-0105). Plaintiff's alleged concern makes little sense because the only argument Plaintiff makes is that she was disabled by Lyme disease, and more specifically by related insomnia and fatigue. (Dkt. #23, pp. 20-21).

Even the articles Plaintiff submitted with her appeal do not suggest that diagnosis of Lyme disease alone is necessarily disabling. The Virtual Flight Surgeons, Inc. article may have come the closest with the vague suggestion that Lyme disease "may adversely affect pilots . . careers if ignored." (AR-0665). As the evidence forced her to do, Plaintiff focused her argument on insomnia and fatigue rather than the diagnosis. (Dkt. #23, p. 21). The reviewers took the same approach, finding that Plaintiff tested positive for Lyme disease and looking at the potentially disabling insomnia and fatigue. (AR-0103-0107). They concluded that Plaintiff's disability was only supported through July 23, 2012, at which point two of her own treating physicians had reported Plaintiff's insomnia had resolved. (AR-0037, 0533).

Plaintiff also argues that MES Solutions was deliberately instructed to perform too narrow a review, alleging their instructions "removed any independence that this medical records examiner had in undertaking its 'peer review.'" (Dkt. #23, p. 19). Plaintiff's argument would require the Court to ignore Dr. Butler's role in assessing her allegation of disability as a whole

and the authority given to him to decide whether an independent medical examination was necessary "to provide a clear and definitive determination on the case." (AR-0090). Although Dr. Butler did not choose to have Plaintiff examined, he did consult with each of the four other medical specialists and sign off on each of their opinions. (AR-0094-0111). After participating in the review of all of Plaintiff's medical evidence, only Plaintiff's reported insomnia and fatigue were found by to be disabling, and those only until July 23, 2012. (AR-0105).

Plaintiff even complains that MES Solutions was instructed to focus on providing an opinion related the LTD benefits of the Plan. (Dkt. #23, p. 18). Commercial aviation is highly regulated and a the Plan's medical inquiries must remain separate from those governed by the FAA's regulations. The agreement between American and the Union to appoint MES Solutions to decide "the clinical validity of a Pilot Employee's claim" is limited to LTD Plan determinations. (AR-0138). Although the review was to be led by a Senior Aviation Medical Examiner, the request explained:

> It should also be noted that this request for professional medical consultation is to determine disability and treatment compliance only, as referenced in the Plan. This request for medical consultation should not address the Pilot's fitness for duty, qualification or disqualification for FAA medical certificate for the Pilot, Pilot loss of license, or factors other than those contained in the questions stated below, as the Plan's determining factors for approval of disability benefits focus on whether or not the Pilot meets the Plan's definition of disability, and/or whether or not the Pilot meets the requirement of receiving and complying with qualified medical care (treatment compliance).

(AR-0091). Both the instructions and the actual review conducted by Dr. Butler and his team of specialists were entirely appropriate.

> ### 2. *Plaintiff's Argument That The PBAC Disregarded Substantial Evidence And Did Not Consider The Whole Record Is Incorrect*

Plaintiff begins this argument by articulating binding precedent prohibiting the Court from imposing any form of "treating physician rule" and then begins her effort to undermine that authority. (Dkt. #23, pp. 19-21). The binding precedent from the Supreme Court is this:

> [W]e hold, courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation

*Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). It is also true that a plan administrator "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Id.* The Supreme Court drew the line at "reliable evidence." An administrator able to credit reliable evidence is not "arbitrarily refus[ing] to credit the claimant's evidence."

Plaintiff seems to concede that there are conflicting medical opinions in this case, but disagrees with the PBAC's choice of which evidence to credit. (Dkt. #23, p. 19). Specifically, she complains that Dr. Posorske's notes reference "persistent insomnia and fatigue" after Dr. Turrisi's July 23, 2012 note indicated these symptoms had resolved. *Id.* But, she exaggerates the content of Dr. Posorske's notes, which recount Plaintiff's entire history without clearly identifying her current status. (AR-0602). Plaintiff was noted to have experienced "extreme difficulty in sleeping [and] fatigue," but also that treatment had "improved her sleep." *Id.* Both Dr. Turrisi's note of July 23, 2012 and Dr. Johnson's note of June 6, 2012 informed the PBAC and the reviewing physicians that Plaintiff's insomnia had resolved.

When there is evidence that would support differing results, it is the plan administrator's role "to resolve the conflicts." *Booth*, 201 F.3d at 345. Selecting which facts to rely upon is

"part of a plan administrator's job." *Evans*, 514 F.3d at 326. Summary judgment must be entered in favor of Defendant because the PBAC's decision was supported by substantial evidence and its role was to choose between that evidence and the evidence favored by the Plaintiff.

### 3. *Plaintiff's Allegations Regarding Full And Fair Review (And Fiduciary Breach) Are Not Well Taken*

In the Complaint, Plaintiff alleges a single cause of action for payment of benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). Nonetheless, the last five pages of her memorandum are dedicated to arguing that "Defendant Breached Its Fiduciary Duties Owed To Plaintiff." (Dkt. #23, pp. 21-25). An actual breach of fiduciary duty claim would necessarily fail because: (1) the Plan is not a fiduciary[3]; (2) Plaintiff did not plead such a claim; and, (3) the law does not permit a breach of fiduciary duty clam under 29 U.S.C. § 1132(a)(3) when an adequate remedy for an alleged denial of benefits is available under § 1132(a)(1)(B).[4] Unless Plaintiff argues for the first time on reply that she actually intended to assert a breach of fiduciary duty claim, the Plan will not expound upon these arguments.

Despite her misuse of breach of fiduciary duty concepts, Plaintiff's argument might be read as suggesting she believes the Administrator's decision was "very bad" and perhaps arbitrary and capricious. (Dkt. #23, pp. 21-25). After taking a long time to set up the argument,

---

[3]     "Before one can conclude that a fiduciary duty has been violated, it must be established that the party charged with the breach meets the statutory definition of 'fiduciary.'" *Adams v. The Brink's Co.*, 420 F.Supp.2d 523, 551 (W.D.Va. 2006) aff'd, 261 Fed. App'x 583 (4th Cir. 2008); *quoting Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 60-61 (4th Cir.1992); 29 U.S.C. § 1002(21)(A).

[4]     "[R]elief under § 1132(a)(3) is normally appropriate only for injuries that do not find adequate redress in ERISA's other provisions." *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 102 (4th Cir. 2006) (*citing Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996)); *see also*, *Leach v. Aetna Life Ins. Co.*, No. CIV.A. WMN–13–2757, 2014 WL 470064, at *4 (D.Md. Feb. 5, 2014).

Plaintiff returns to the argument that American Airlines denied her right to a full and fair review because of the instructions given to MES Solutions.  *Id.* at 24-25.  In addition to the contractual limits on the scope of review by a "clinical authority" co-selected by American and the Union, determination of disability under the terms of the Plan is based upon a pilot meeting the definition of disability under the terms of the Plan.  The Plan's terms do not define "disability" based upon whether or not a pilot does/does not qualify as "fit for duty" for FAA purposes or does/does not qualify for a FAA medical certification.[5]

The argument Plaintiff makes here was considered and rejected by the United States District Court for the Southern District of Florida, which explained:

> Plan members do not qualify for disability under the Plan merely because they are disqualified by the FAA from serving as pilots. Instead, the Plan members must satisfy additional requirements under the Plan. In particular, Plan members must show they have an illness or injury that has been verified by a qualified medical authority. Additionally, the Plan requires that pilots satisfy certain eligibility criteria in order to receive benefits. Specifically, the Plan states pilots' disabilities will continue to exist only if they "continue[ ] to receive qualified medical care consistent with the nature of the illness or injury that gives rise to the Disability." (Id. 731). Furthermore, the disability "will be considered to cease to exist if (i) [the pilot's] health is restored so as not to prevent him from acting as an Active Pilot Employee ... (ii) verification of such Disability can no longer be established or (iii) appropriate medical care is wantonly disregarded." (Id.).

*Meadows v. American Airlines*, 2011 WL 1102774, *12 (S.D. Fla. March 24, 2011), *aff'd* 520 Fed. App'x 787 (11th Cir.2013).  Although Mr. Meadows was precluded from obtaining an FAA Medical Certificate, the court found that it was not arbitrary and capricious to deny his claim for LTD benefits under this Plan.  *Id.*

---

[5]    "**Disability**" or "**Disabled**" means an illness or injury, verified through a qualified medical authority in accordance with Section V of the Plan, which prevents a Pilot Employee from continuing to act as an Active Pilot Employee in the Service of the Employer.  (AR-0135).

Additional rationale for the distinction between FAA requirements and the Plan can be demonstrated through some of the evidence Plaintiff relies upon to support her claim. She directed the Court's attention to the half-page note of Dr. Paula Corrigan, which is not supported by any treatment records. (AR-0613). Dr. Corrigan notes that:

> [b]ased upon review of her medical records, we can confirm that Ms. Vetter is currently prohibited from exercising the privileges of her Airman's Medical Certificate under the provisions of Section 61.53 of the FAR. She has appropriately grounded herself while undergoing further evaluation and treatment for her condition. Her condition will require review and clearance from the FAA before she can return to flying duties.

*Id*. As Dr. Corrigan states, the Plaintiff "grounded herself" pursuant to FAA regulations. *See* 14 C.F.R. § 61.53(a). While the FAA regulations vest Plaintiff with the authority to make that determination, the Plan gives the PBEC authority "[t]o review and render decisions respecting a claim for (or denial of a claim for) a benefit under the Plan . . .". (AR-0142-0143). The participants of this Plan cannot be permitted determine their own eligibility to receive LTD benefits by grounding themselves pursuant to § 61.53(a).

In this case, Plaintiff relies upon notes from physicians, Dr. Corrigan and Dr. Kessler, who are in roles requiring them to accept Plaintiff's own opinion of her ability to fly. Meanwhile, the Plan is defending the PBAC's reliance on the opinion of a medical consultant jointly chosen by American and the Union. In *Black & Decker Disability Plan v. Nord*, the Supreme Court explained:

> the assumption that the opinions of a treating physician warrant greater credit than the opinions of plan consultants may make scant sense when, for example, ... a specialist engaged by the plan has expertise the treating physician lacks. And if a consultant engaged by a plan may have an incentive to make a finding of not disabled, so a treating physician, in a close case, may favor a finding of disabled.

538 U.S. at 833. Plaintiff's effort to convince the Court to afford additional weight to her treating physicians must be rejected.

IV.    **CONCLUSION**

For all of these reasons, Defendant respectfully requests that this Court issue an order granting its Cross-Motion For Summary Judgment and denying the Plaintiff's motion for summary judgment.

Dated:    August 31, 2017                 Respectfully submitted,

                                          **LITTLER MENDELSON, P.C.**


                                          */s/ Daniel W. Srsic*
                                          Daniel W. Srsic  (OH #0064177)
                                               (admitted *pro hac vice* 01/05/2017)
                                          21 East State Street, 16th Floor
                                          Columbus, OH  43215
                                          Telephone:    614.463.4213
                                          Facsimile:    614.573.9812
                                          E-mail:       dsrsic@littler.com

                                          S. Libby Henninger  (Fed. Bar No. 17389)
                                          815 Connecticut Avenue, N.W., Suite 400
                                          Washington, DC  20006
                                          Telephone:    202.772.2527
                                          Facsimile:    202.315.3345
                                          E-mail:       lhenninger@littler.com

                                          *Counsel for Defendant American Airlines,*
                                               *Inc. Pilot Long-Term Disability Plan*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on August 31, 2017, I filed the foregoing *Defendant's Response to Plaintiff's Motion for Summary Judgment and Cross-Motion for Summary Judgment* with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Charles F. Fuller, Esq.
McCHESNEY & DALE, P.C.
4000 Mitchellville Road #222
Bowie, MD  20716
chuck@dalelaw.com

*Counsel for Plaintiff Leslie R. Vetter*


/s/ Daniel W. Srsic
Counsel for Defendant

Firmwide:149739871.2 076301.1007
8/31/17