**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

| | |
|---|---|
| **LESLIE R. VETTER,** | |
| Plaintiff, | |
| **v.** | Case No. 8:16-cv-02833-PWG |
| **AMERICAN AIRLINES, INC. PILOT LONG-TERM DISABILITY PLAN,** | |
| Defendant. | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS CROSS-MOTION
FOR SUMMARY JUDGMENT**

I.  **INTRODUCTION**

In this action, Plaintiff challenges the Pension Benefits Administration Committee's ("PBAC") decision denying continued long term disability ("LTD") benefits beyond July 23, 2012.  At the time her benefits were terminated, the cause of Plaintiff's health concerns was undiagnosed.  When she appealed six months later, however, Plaintiff explained that she "was ultimately diagnosed with Lyme Disease and related conditions."  (AR-0122-0123).  Now, Plaintiff relies on many potential symptoms generally associated with Lyme disease, without regard to whether her medical records establish that she was disabled by those symptoms.  (Dkt. #29, pp. 2-3).  It is undisputed that Lyme disease may cause disabling symptoms—disability benefits were approved from May 3, 2012 through July 23, 2012 because she was found to have been disabled by fatigue.  (AR-0105).  Fatigue is the symptom that Plaintiff continues to single out in her arguments.  (*See e.g.*, Dkt. #29-1, p. 14).  But, two of Plaintiff's own physicians reported that her issues with fatigue and sleep disturbance had resolved before the LTD benefits were terminated, and a third reported she "had ~85% of her normal energy level back."  (AR-

0073, 0037, 0533-0534).   Before making its decision to deny Plaintiff's appeal, the PBAC considered the records of those two treating physicians, the opinions of the physicians who supported Plaintiff's disability claim beyond July 23, 2012, and the opinions of medical experts jointly chosen with Plaintiff's Union to evaluate the medical evidence.   The decision to deny Plaintiff's claim for additional disability benefits must be affirmed because it was not an abuse of discretion.

## II.    **STANDARD OF REVIEW**

The parties agree that the Pilot Long Term Disability Plan (the "Plan") gives the PBAC discretionary authority to determine eligibility for benefits.  (Dkt. #29-1, p. 5).  As such, the Court is required to play a "secondary rather than primary role in determining a claimant's right to benefits."  *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008).   Under the applicable standard, the PBAC's decision to deny benefits beyond July 23, 2012 must be upheld because "it is the 'result of a deliberate, principled reasoning process and … supported by substantial evidence.'"  *Vaughan v. Celanese Americas Corp.*, 339 Fed. App'x 320, 322 (4th Cir. 2009); *quoting Brogan v. Holland*, 105 F.3d 158, 161 (4th Cir. 1997).  The court may not disturb the determination of the plan administrator if it is reasonable, even if the court, exercising independent judgment, would have reached a different decision.  *Donovan v. Eaton Corp. Long Term Disability Plan*, 462 F.3d 321, 326 (4th Cir. 2006).

The Fourth Circuit has enumerated eight non-exclusive factors that may be used to guide the courts in reviewing the reasonableness of an administrator's decision.  *See Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342-43 (4th Cir. 2000).[1]   However,

---

[1]      These factors include: (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision making process was

not all of the *Booth* factors are relevant in every instance.  *See Moore v. Liberty Life Assur. Co. of Boston,* 129 F.Supp.3d 408, 411 nt. 2 (W.D. Va. 2015); *citing Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d 353, 361 (4th Cir. 2008).  Plaintiff's most recent memorandum endeavors to make use of each of the eight factors and the Plan will use the structure to respond, despite the awkward fit of some of Plaintiff's arguments into that rubric.  In considering these factors, the burden of proving entitlement to benefits remains on the Plaintiff.  *Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 270 (4th Cir. 2002)

## III.    THE ADMINISTRATOR'S DETERMINATION WAS NOT ARBITRARY AND CAPRICIOUS AND MUST BE UPHELD BY THIS COURT

### A.    Each Of The Eight *Booth* Factors Support A Finding That There Was No Abuse Of Discretion

Much of the argument in Plaintiff's Memorandum in Opposition follows the eight factors articulated in *Booth v. Wal-Mart Stores, Inc.*, 201 F.3d 335, 342-43 (4th Cir. 2000).  (Dkt. #29-1, pp. 6-17). A proper analysis of these factors demonstrates that Plaintiff's arguments are without merit and the PBAC's decision to deny additional benefits was not an abuse of discretion.

#### 1.    *The PBAC's Decision Finds Support In The Plan Language*

##### a.    The PBAC Determined Whether Plaintiff Was Disabled As The Plan Defines Disability

According to the Plan, a pilot may be entitled to disability benefits if she establishes "an illness or injury, verified through a qualified medical authority in accordance with Section V of the Plan, which prevents a Pilot Employee from continuing to act as an Active Pilot Employee in the Service of the Employer."  (AR-0133).  To be disabled, therefore, a pilot must convince the Plan's "qualified medical authority" that she cannot act as an Active Pilot employee because of

_____

reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.  *Booth,* 201 F.3d at 342-43.

her illness or injury.  In this case, the PBAC relied upon the report of MES Solutions in denying Plaintiff's appeal.  (AR-0057-0069).

Plaintiff grasps at the pilot job description's inclusion of a "valid first class medical certificate" in its list of requirements.  (Dkt. #29-1, p. 7).  She incorrectly argues that the Plan's language "requires investigation or inquiry whether a pilot claiming disability is qualified or disqualified for a FAA medical certificate . . ."  *Id.*  In fact, the PBAC has consistently interpreted the Plan's determination as being independent from a pilot's FAA medical certification.  *See, e.g., Meadows v. American Airlines*, Case No. 10-22175, 2011 WL 1102774 (S.D. Fla. March 24, 2011), *aff'd* 520 Fed. App'x 787 (11th Cir. 2013); *Emery v. Am. Airlines, Inc.*, 56 F.Supp.3d 1284, 1305 (S.D. Fla. 2014).  "The dispositive principle remains . . . that where plan fiduciaries have offered a reasonable interpretation of disputed provisions, courts may not replace [it] with an interpretation of their own—and therefore cannot disturb as an abuse of discretion the challenged benefits determination."  *Hooper v. UnitedHealthcare Insurance Company*, 694 Fed. App'x 902, 910 (4th Cir. 2017); *quoting*, *de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1188 (4th Cir. 1989).

In light of the discretionary authority afforded to the PBAC under the Plan (AR-0142-0143), the Court is required to accept the PBAC's position that the medical certificate is not dispositive.  *Id.*  Even if it were not required to do so, this is only reasonable interpretation of the Plan's requirements.  The PBAC's position is in harmony with the courts' view that other professional license restrictions are separate from disability benefit determinations.  *See, e.g., Stanford v. Cont'l Cas. Co.*, 514 F.3d 354, 357 (4th Cir. 2008) (restriction to nursing license does not require award of disability benefits).  On the other hand, Plaintiff's reliance on the regulations allowing her to ground herself, 14 C.F.R. § 61.53 (Dkt. #29-1, p. 14), shows that

interpretation is unreasonable since it would require payment of benefits based on a pilot's determination of her own ability. If that was the intent, none of the Plan's procedures would be necessary.

Plaintiff's argument extends to challenging the instructions given to MES Solutions, which are consistent with the administrator's interpretation of the Plan. (Dkt. #29-1, p. 9). She argued that the directions "interfered with MES' ability to determine whether [Plaintiff's] medication conditions prevented her from qualifying for a FAA First Class Medical Certificate." *Id.* The instructions were not wrong, requesting a "review [of] all documents enclosed (referencing the Pilot LTD definitions and provisions, as well as all other medical and claim information) and advise if this Pilot's claimed conditions met the requirements of Disability as defined by the Plan. (AR-0091). That is exactly what MES Solutions was supposed to do.

Plaintiff misquotes the portion of the instructions which distinguish the required determination of disability under the Plan from "the Pilot's fitness for duty, qualification or disqualification for FAA medical certificate for the Pilot, or Pilot loss of license . . ." (Dkt. 29-1, p. 9). The block quote in Plaintiff's brief does not make sense because it omits thirteen words, which help explain that—"the Plan's determining factors for approval of disability <u>benefits focus on whether or not the Pilot meets the Plan's definition of</u> disability . . ." (AR-0091) (emphasis on words omitted by Plaintiff). With all of the words in place, it is unmistakable that Plaintiff is asking this Court to improperly find fault with instructions that match the PBAC's interpretation the Plan's language. *Hooper*, 694 Fed. App'x at 910; *de Nobel*, 885 F.2d at 1188. The Plan's definition is consistent with the denial of benefits.

**b.    MES Solutions Was A Qualified Medical Authority**

A pilot is entitled to benefits under the plan if she establishes "an illness or injury, <u>verified through a qualified medical authority in accordance with Section V of the Plan,</u> which

prevents a Pilot Employee from continuing to act as an Active Pilot Employee in the Service of the Employer." (AR-0133) (emphasis added). Section V of the Plan identifies two qualified medical authorities. Initially, "verification of a Pilot Employee's Disability shall be established by the corporate medical director . . ." (AR-0138). However, "[a]ny dispute as to the clinical validity of a Pilot Employee's claim of the existence of a Disability or the continuation of the illness or injury which gave rise to such Disability shall be referred to a clinical authority selected under the Agreements [between American and the Union]." (AR-0138). Pursuant to the collectively bargained arrangement, Plaintiff's claim materials were submitted to MES Solutions, an independent clinical consulting firm mutually agreed upon by American and the pilots' Union for its review and medical opinions on the case. (AR-0090-0093). The Plan language establishes that MES Solutions was a "qualified medical authority" pursuant to the Plan.[2]

The selection of MES Solutions as a "qualified medical authority" is a decision that must be treated as having been made with Plaintiff's own agreement. The Railway Labor Act gives employees the right to "organize and bargain collectively through representatives of their own choosing" and "[t]he majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class." 45 U.S.C. § 152. The United States Supreme Court has explained:

> [W]hen the representative bargains for a change of working conditions, … they are the working conditions of employees "as a class." [The Railway Labor Act] defines "representative" as meaning "Any person or . . . labor union . . . designated either by a carrier or group of carriers or by its or their employees, to act for it or them."

---

[2]    Despite unambiguous language, Plaintiff nonetheless argues that the materials submitted in support of her claim from Dr. Kessler and Dr. Corrigan show "two qualified medical authorities" supported her claim. (Dkt. #29-1, p. 8). Neither of these physicians is a "qualified medical authority in accordance with Section V of the Plan."

*Steele v. Louisville & N. R. Co.*, 323 U.S. 192, 199 (1944). In *Steele*, the Supreme Court also noted that "the statutory representative of a craft is not barred from making contracts which may have unfavorable effects on some of the members of the craft represented." *Id*. at 193 (internal citations omitted). Here, Vetter is bound by the Union's participation in the joint selection of MES Solutions as the "qualified medical authority" to review the medical evidence related to her disability claim. Through her Union, Plaintiff joined in the selection of MES Solutions.

Because the PBAC's decision was made in reliance on the opinions obtained from through MES Solutions, as required by Plan language, this factor favors a finding that there was no abuse of discretion.

### c.      LTD Benefits Were Terminated According To Plan Language

The Plan provides that "[a] Pilot Employee's Disability will be considered to cease to exist if (1) health is restored so as not to prevent the Pilot Employee from acting as an Active Pilot Employee in the service of the Company; (2) verification of such Disability can no longer be established; or (3) appropriate medical care is wantonly disregarded by such Pilot Employee." (AR-0138). This language supports a conclusion that the denial of additional benefits was not an abuse of discretion because the PBAC's decision explained:

> Of her multiple claimed conditions, the only condition that adversely affected her ability to perform her duties as a pilot was her insomnia and resulting daytime fatigue. With conservative treatment, her insomnia markedly improved by July 23, 2012. . . . Thus, her disability resulting from insomnia was no longer disabling after July 23, 2012.

(AR-0069). The PBAC's decision resulted from application of plan language calling for the termination of benefits when a participant's health sufficiently improves. As a result, this factor favors the Plan.

7

###### 2.    *The Denial Of Benefits Was Consistent With The Purposes And Goals Of The Plan*

The purpose of the Plan itself is to replace a portion of an eligible pilot's compensation when she is unable to work as a result of a "disability," defined by the Plan as "an illness or injury, verified through a qualified medical authority in accordance with Section V of the Plan, which prevents a Pilot Employee from continuing to act as an Active Pilot Employee in the Service of the Employer …."  (AR-0135-0136).  Although the Plan is for the benefit of covered employees, the disability benefit it offers "is provided, administered and funded by the Company subject to the Agreements between the [Union] and the Company . . ." (AR-0133).  As such, the purpose can only be to provide the negotiated and agreed upon benefit.  Once voluntarily established, the employee benefits must be provided according to the Plan's terms.  29 U.S.C. § 1102.  This furthers the mutual interests of pilots currently eligible to receive benefits and those who may become eligible in the future by reserving funds for those who qualify under the Plan.  For the PBAC to distribute funds to any claimant without considering contrary medical evidence and exercising discretion afforded by the Plan to determine if such claimant is entitled to such benefits, would be improper.

Plaintiff erroneously asserts that disability benefits were terminated to benefit Defendant at the expense of Plaintiff, and then argues that such termination is counter to the purpose of the Plan and should therefore be found arbitrary and capricious.  (Dkt. #29, pp. 9-10).  The argument lacks foundation.  Because the purpose of the Plan is to provide the benefits agreed upon between the Company and the Union and the PBAC's was made in reliance on the opinion of the jointly selected "qualified medical authority," MES Solutions, this factor favors the Plan.

### 3.    The Materials Considered By The PBAC Provided More Than Adequate Support For The Denial Of Additional Benefits

Plaintiff argues that there was "substantial medical evidence supplied by [her] in support of her appeal."  (Dkt. #29, p. 10).  Even if this were true, the argument suggests that the Court reverse the standard of review in this case—the Court's role is to examine whether the PBAC's decision was supported by substantial evidence.  *Vaughan*, 339 Fed. App'x at 322; *Brogan*, 105 F.3d at 161.  This Court has held that "[s]ubstantial evidence is that 'which a reasoning mind would accept as sufficient to support a particular conclusion' . . . 'consist[ing] of more than a mere scintilla of evidence but may be somewhat less than a preponderance.'"  *Martin v. The Hartford Life and Acc. Ins. Co.*, Case No. WDQ–12–2134, 2013 WL 5297146 (D. Md. Sept. 18, 2013) ("[I]f there is evidence to justify a refusal to direct a verdict were the case before the jury, then there is substantial evidence") (*citations omitted*).  Because it is possible to find "substantial evidence" would support either the denial or allowance of benefits, the mirror image standard argued by Plaintiff cannot be applied.

Plaintiff concedes that there are conflicting medical opinions, by describing the opinions of her "treating physicians regarding her ability to work" as "nearly unanimous."  (Dkt. #29-1, p. 10).  *In fact, the information gleaned from the medical records was not "nearly unanimous."*  Among the evidence cited in the report by the "qualified medical authority" were:

- Dr. Marina Johnson's office visit note of June 6, 2012 "indicating that …the sleep normalized as of 6/6/12" (AR-0037);

- Dr. Brian Turrisi's office visit note of July 23, 2012 reporting "she is sleeping a lot better now . . . and she is just now getting back to her normal sleep pattern" (AR-0533);

- Dr. Lynette Posorske's office visit note of August 27, 2012 "indicat[ing] that the claimant had ~85% of her normal energy level back" (AR-0073).

The essence of Plaintiff's argument is that she disagrees with the choice that was made of which evidence to credit. (Dkt. #23, p. 19; Dkt. #29, pp. 10-11). But, an abuse of discretion may not be found based on a decision choosing between conflicting evidence. *See Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 344-345 (4th Cir. 2000) ("It is not an abuse of discretion for a plan fiduciary to deny ... benefits where conflicting medical reports were presented."); *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

The PBAC reviewed the entire administrative record and relied upon the report of the "qualified medical authority," selected by agreement with Plaintiff's Union. (Dkt. #26, pp. 8-11). The materials considered in making the decision to deny Plaintiff further disability benefits were more than adequate, providing strong support for the PBAC's conclusion.

### 4. *The Denial Of Benefits Was Consistent With Other Provisions And Earlier Interpretations Of The Plan*

The PBAC's interpretation and application of Plan terms has remained consistent. Although Plaintiff argues that "qualification or disqualification for FAA medical certificate," should dictate the administrator's decision, it is not and has not been the standard applied in connection with this Plan. *See, e.g., Meadows*, 2011 WL 1102774, *aff'd* 520 Fed. App'x 787; *Emery*, 56 F.Supp.3d at 1305 ("The Plan's definition of disability . . . does not equate 'disability' with a failure to obtain such a Certificate from the FAA"). In *Meadows,* the Court explained:

> Plan members do not qualify for disability under the Plan merely because they are disqualified by the FAA from serving as pilots. Instead, the Plan members must satisfy additional requirements under the Plan. In particular, Plan members must show they have an illness or injury that has been verified by a qualified medical authority.

*Meadows*, 2011 WL 1102774 *12. In both *Meadows* and *Emery,* the court recognized and adopted Defendant's position that a pilot's failure to obtain FAA certification did not render him or her disabled under the Plan. *Id.* That view has been consistently applied and because the

Union that represents Plaintiff has not bargained for the standard she advocates, this factor must weigh in favor of the Plan.

Plaintiff also argues that her ability to perform the duties of a pilot was not considered. (Dkt. #29-1, p. 12). The PBAC, however, reviewing Plaintiff's appeal for benefits under the American Airlines Inc. Pilot Long-Term Disability Plan, obviously considered the duties of a pilot. In its denial letter, the PBAC explained the Plan's benefit informally:

> Under the terms of the Plan, a pilot who is prevented from acting as a cockpit crewmember in the service of the Company (i.e., American Airlines, Inc., also referred to as "AA") due to a Disability will be eligible to receive Disability benefits from the Plan provided such Disability was incurred on or after February 1, 2004.

(AR-0057). Then it addressed the Plan's formal definition:

> "Disability" or "Disabled" means an or injury, verified through a qualified medical authority in accordance with Section V of the Plan, which prevents a Pilot Employee from continuing to act as an Active Pilot Employee in the service of the Employer.

(AR-0057-0058). It went on to summarize the results of the MES Solutions report by reference to the pilot position, for example:

> Her impaired sleep deficiency did disable her from performing her duties as a pilot. However the records reflect that her insomnia was mostly resolved by July 23, 2012.

(AR-0068). Finally, the PBAC's conclusion addressed Plaintiff's ability to serve as a pilot:

> Of her multiple claimed conditions, the only condition that adversely affected her ability to perform her duties as a pilot was her insomnia and resulting daytime fatigue. With conservative treatment, her insomnia markedly improved by July 23, 2012. While she still experienced periodic episodes of insomnia after that time, the condition was self-limiting and responded to conservative treatment. Thus, her disability resulting from insomnia was no longer disabling after July 23, 2012.

(AR-0069).  Before the PBAC made this decision, MES Solutions was provided with a copy of Plaintiff's job description and the Plan's definitions, so that the pilot job duties would be considered.  (AR-0091).  To ensure that the requirements were fully understood, the participation of a Senior Aviation Medical Examiner was secured.  (AR-0090).  Plaintiff's argument that her ability to perform the duties of a pilot was not considered defies credulity.

Plaintiff cites *Miller v. American Airlines, Inc.*, a decision from the Third Circuit Court of Appeals, to argue that a failure to consider her ability to perform the duties of a pilot would be a factor suggesting the denial was an abuse of discretion.  (Dkt. #29, pp. 12-13).  Miller was a pilot who suffered a psychotic episode while on duty.  *Miller v. American Airlines, Inc.,* 632 F.3d 837, 841 (3rd Cir. 2010).  He received disability benefits beginning in 1999 and continuing until they were terminated in 2006.  *Id*. at 842-43.  The Third Circuit described a "striking incongruity between Dr. Crain's conclusion that Miller could return to work as a pilot—having to operate under considerable stress—and his recognition that stress, fatigue, and sleep deprivation could prompt another psychotic episode." *Id*. at 855.  Thus, the Third Circuit found the failure to address the demands of the pilot position weighed in favor of finding the benefits denial arbitrary and capricious.  *Id.  Miller* is easily distinguished from this case.

In *Miller*, there was no evidence indicating a change in Plaintiff's condition over the years during which benefits were approved, including with respect to his "latent risk of psychosis." *Id.* at 848-49.  In this case, on the other hand, there was evidence of both a change in Plaintiff's fatigue condition and consideration of how that would impact her ability to work as a pilot.  Three of Plaintiff's treating physicians noted that her fatigue and sleep issues had improved by the Summer of 2012.  (AR-0037, 0073, 0533).  Plaintiff's request for disability benefits was approved because of fatigue and the evidence that condition had improved

distinguishes this case from *Miller*. While Miller's latent risk of psychosis remained, Plaintiff's documented improvement is evidence she could perform pilot job duties. (AR-0099).

The PBAC's interpretation of the Plan's requirements is consistent with the Plan's language and earlier interpretations. As such, this factor weighs in Defendant's favor.

### 5.    *Decision-Making Process was Reasoned and Principled*

### 6.    *The Decision Was Consistent with the Procedural and Substantive Requirements of ERISA*

Plaintiff combines her arguments for the fifth and sixth *Booth* factors, briefly arguing that the Court should look to arguments elsewhere in her brief in order to determine these factors should favor her claim. (Dkt. #29-1, pp. 13-14). The approach is logical, since these factors clearly favor a finding that there was no abuse of discretion. The memorandum supporting Defendant's Motion for Summary Judgment clearly established that the decision-making process was both reasoned and principled and consistent with both the procedural requirements of ERISA and those bargained for by Plaintiff's Union. (Dkt. #26, pp. 12-14); 29 U.S.C. § 1133.

Briefly, however, Plaintiff's claim required the PBAC to make a decision based upon medical judgment, so it was required to "consult with a health care professional who has appropriate training and experience in the field of medicine involved." (AR-0148); 29 C.F.R. §§ 2560.503-1(h)(3)(iii), (h)(4). The PBAC followed these procedures and consulted with Dr. James Butler to inform its determination of Plaintiff's claims. The consultation in Plaintiff's case was in the form of a peer review report, which included independent reviews by four specialists in various fields relevant to Plaintiff's claims in conjunction with the coordinating physician who conferred with specialists regarding the findings. (AR-0094-0111). The PBAC thereby satisfied the requirements under the Plan as well as those of the Department of Labor in consulting with Dr. Butler and the other medical experts who contributed to the report.

(AR-0148); 29 C.F.R. §§ 2560.503-1(h)(3)(iii), (h)(4). The PBAC's decision was made after reviewing the Plaintiff's entire claims file and relying on the opinion of independent medical reviewers, mutually agreed upon with Plaintiff's Union.

### 7. *The Denial Of Benefits Was Not Inconsistent With Any External Standard Relevant to the Exercise of Discretion*

The denial of benefits was not inconsistent with any external standards that would be relevant to the PBAC's exercise of discretion on this claim. Plaintiff again argues that the FAA medical certificate standard should be made applicable to the PBAC's determination. And, Plaintiff goes on to imply that considerations of aviation safety should be given greater weight than she believes they have been by the PBAC. Her arguments improperly invite the Court to consider what it might determine are the most relevant factors for an award of benefits under the Plan. But, that approach is plainly improper. *See Moore v. Reynolds Metals Co. Retirement Program for Salaried Emps.*, 740 F.2d 454, 457 (6th Cir. 1984) ("Courts . . . have not been authorized by Congress to impose upon employers the court's subjective beliefs concerning the relative value of benefits which employers have chosen voluntarily to confer upon employees"); *see also United Mine Workers of America Health and Retirement Funds v. Robinson*, 455 U.S. 562 (1982); *Trident Regional Health Sys. v. Polin*, 948 F.Supp. 509, 511 (D.S.C. 1996).

Plaintiff's arguments might be distilled to an improper suggestion that the administration of the Plan has an out-sized impact on airline safety. But airline safety is regulated by the Federal Aviation Administration, rather than being subject to the whims of employers for which offering employee benefits, like Plaintiff is seeking, is entirely voluntary. *Trident Regional Health Sys.*, 948 F.Supp. at 511. Plaintiff correctly notes that federal regulations permit pilots to self-ground themselves. (Dkt. #29-1, p. 14). There is no requirement, in federal regulations or the Plan, that long-term disability benefits be paid under those circumstances.

The matter in dispute is only whether the PBAC had substantial evidence upon which it was possible to conclude that Plaintiff's fatigue no longer rendered her disabled under the Plan after July 23, 2012. Plaintiff has not identified any external standards relevant to the PBAC's exercise of discretion with respect to that question.[3]

### 8.    *The Decision To Deny Benefits Was Not Influenced By Any Improper Motives Or Conflict of Interest*

Plaintiff argues that the PBAC's decision to deny disability benefits beyond July 23, 2012 should be suspect because of purported conflict of interest of the decision makers. (Dkt. #29, pp. 16-17). She points to the U.S. Supreme Court case *Metro. Life Insurance Company v. Glenn* to argue that American's purported conflict of interest weighs in favor of finding abuse of discretion. (*Id*). While the court in Glen did find structural conflicts of interest may be weighed as a factor in determining abuse of discretion, it also noted that such factor "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117-118, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008). Here steps taken by the Company and the Union to eliminate potential conflicts of interest or bias effectively remove any legitimate argument that a purported conflict of interest influenced the PBAC's decision.

The PBAC consulted independent medical authorities, jointly selected and paid for by the Union. Such independent physicians are necessarily free of any conflict of interest. *See also DiCamillo v. Liberty Life Assur. Co.*, 287 F.Supp.2d 616, 624 (D. Md. 2003). This consultation evidences active steps taken to reduce any potential bias in the decision-making process. *Emery v. American Airlines, Inc.*, 56 F.Supp.3d at 1291; *Meadows*, 2011 WL 1102774, *22.

---

[3]     The external standard most commonly referenced in analyzing this factor is an award of Social Security Disability benefits. Plaintiff does not argue that she was found to be disabled by the Social Security Administration or pursuant to any other external standard.

Plaintiff argues that consultation with independent physicians does not eliminate the potential for bias, because the PBAC did not consider the report before Plaintiff's initial denial for continued disability benefits.  (Dkt. #29, pp. 16-17).  However, she provides no authority to support this meritless argument.  Plaintiff's lawsuit challenges the PBAC's final decision regarding continuation of disability benefits, not the initial denial.

Conflict of interest is not a factor that can be weighed in Plaintiff's favor.

**B.    Plaintiff's Additional Arguments**

Plaintiff included a series of "additional arguments" in her memorandum.  (Dkt. #29-1, pp. 17-20).  A number of those issues have been addressed above, so the Plan will only respond to issues that may require additional attention here.

### 1.    *Dr. Butler's Role Reviewing The Medical Evidence Was Appropriate*

Plaintiff argues that Dr. Butler did nothing more than participate in "brief telephone discussions with the records reviewer and sign[] the conflict of interest attestation with each reviewer."  (Dkt. #29-1, p. 18).  This surprising argument is contradicted by the evidence, showing that an appropriate process was followed, with Dr. Butler and the medical specialists documenting their joint conclusions with respect to Plaintiff's evidence.  (AR-0094-0112).

The administrator asked "that MES Solutions perform an evidence-based, forensic medical review/evaluation ("peer review") on the case . . . ."  (AR-0090).  Specifically, it requested a "[p]eer review conducted by [a] Senior [Aviation Medical Examiner] and any additional board-certified physician specialists, with report of written medical determination on the case, providing answers and explanations for specific questions."  *Id*.  Dr. Butler was the Senior Medical Examiner and the "additional board-certified physician specialists" were Dr. Khoury (Internal Medicine/Infectious Disease); Dr. Orleans (OB/GYN); Dr. Sims (Neurology); and Dr. Talwil (Internal Medicine/Gastroenterology).  (AR-0067, 0094-0112).

Each of the medical specialists was required to "confer with the Sr. AME" and they were to "come to an agreement upon the determination." (AR-0090). The 19-page Peer Review Report documents that this process was followed. (AR-0091, 0094-0112).

Plaintiff's more specific allegations with respect to Dr. Butler all fall short. For example, she argues that there is no evidence Dr. Butler reviewed any of Plaintiff's medical records. (Dkt. #29-1, p. 17). But, the Peer Review Report begins with a listing of the "Data Reviewed," which includes all of the medical evidence in the record. (AR-0094-0095). There is no basis for concluding that Dr. Butler did not do what he was specifically asked to do—"review all documents enclosed (referencing the Pilot LTD definitions and provisions, as well as all other medical and claim information) . . ." (AR-0091). A similar analysis applies to Plaintiff's claim that Dr. Butler did nothing more than "signing the conflict of interest attestation with each reviewer." (Dkt. #29-1, p. 18). Each specialist conferred with Dr. Butler, "com[ing] to an agreement upon the determination," and the joint signatures obviously reflect that agreement, rather than merely an agreement with respect to conflict of interest. (AR-0090, 0094-0112).

Plaintiff's effort to undermine Dr. Butler's participation in the peer review process fails.

## 2.   *Plaintiff's Effort To Distinguish The Meadows Decision Fails*

Plaintiff argues that Defendant's citation to *Meadows v. American Airlines, Inc.* is misplaced, because "[t]he definition of disability in Meadows is materially different than here." (Dkt. #29, p. 19). However, Plaintiff does not provide an explanation of how she believes the definition is materially different than that under the plan here. The definition of disability in *Meadows* was "an illness or injury verified through a qualified medical authority that prevents a pilot from continuing to work as a pilot for the Company." *Meadows v. American Airlines*, 2011 WL 1102774 at *3. Here, the definition of disability is "an illness or injury, verified through

a qualified medical authority in accordance with Section V of the Plan, which prevents a Pilot Employee from continuing to act as an Active Pilot Employee in the Service of the Employer….” (AR-0135-0136). These definitions are virtually identical, with neither suggesting Plan benefits are payable based upon the FAA medical certificate. Plaintiff omits, with an ellipsis, what appears to be the most notable difference, the language showing that MES Solutions was the “qualified medical authority” jointly selected with her Union in this case. In *Meadows*, the court found that it was not arbitrary and capricious to deny claim for LTD benefits under the Plan and this Court should reach the same conclusion. *Id.*

IV. **CONSIDERING PLAINTIFF'S EVIDENCE FROM OUTSIDE THE ADMINISTATIVE RECORD IS IMPROPER AND THAT EVIDENCE AND RELATED ARGUMENTS MUST BE STRICKEN**

Consideration of evidence outside of the administrative record is inappropriate when a benefits determination is reviewed for abuse of discretion. *Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir. 1994); *see also Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir. 1995). Despite this long established rule, Plaintiff attempts to bolster her claim by attaching five exhibits to her most recent memorandum and relying on them to make arguments that were never considered by the administrator. Specifically, Plaintiff has attached: (1) Exhibit 1, Centers for Disease Control and Prevention, Lyme disease; (2) Exhibit 2, James Moses, M.D., *et al.*, Lyme Disease Presenting With Persistent Headache, Pediatrics, Vol. 112, No. 6, Dec. 2003; (3) Exhibit 3, Syed Ali Zaidi, *et al.*, Gastrointestinal and Hepatic Manifestations of Tickborne Diseases in the United States, Clinical Infectious Diseases, 2002; (4) Exhibit 4, Lorraine Johnson, J.D., M.B.A., Executive Director, CALDA, Two Standards of Care in Lyme Disease; (5) Exhibit 5, Fatigue In Aviation, Federal Aviation Administration & Civil Air Patrol, Safety Newsletter, The Sentinel (April 2010). None of this evidence is found in

the administrative record and none of it is appropriate for the Court to consider when reviewing the denial of Plaintiff's claim.

Evidence outside the administrative record must be excluded because administration of ERISA plans is to be left in the hands of plan fiduciaries, not federal courts. *Helton v. AT&T Inc.*, 709 F.3d 343, 352 (4th Cir. 2013); *citing Bernstein*, 70 F.3d at 788. With the first four of her exhibits, Plaintiff asks the Court to become an internet-expert on her medical condition in order to question the information the PBAC received from the "clinical authority" selected according to the terms of the Plan to review her medical information. The DOL's ERISA claims regulations require claims administrators to "consult with a health care professional who has appropriate training and experience," without any suggestion that those trained as lawyers or judges should be permitted to rely on internet medical research instead. 29 C.F.R. §§ 2560.503-1(h)(3)(iii), (h)(4). The PBAC satisfied this requirement and adopted the conclusion of the "clinical authority" jointly chosen with Plaintiff's representative, the Union. Even if the Court had the medical expertise to do so, it is not permitted to re-weigh the evidence. *Giles v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*, 925 F.Supp.2d 700, 715-716 (D. Md. 2012).[4]

---

[4]    Although it does not apply here, a narrow exception to the bar against outside evidence exists. The Fourth Circuit has concluded that, under *Sheppard*, a district court may consider evidence outside of the administrative record on abuse of discretion review in an ERISA case when such evidence is necessary to adequately assess the Booth factors <u>and the evidence was known to the plan administrator when it rendered its benefits determination.</u> *Helton*, 709 F.3d at 356 (emphasis added). A plaintiff attempting to rely on such evidence must make a "showing that this evidence was known to the Plain Administrator at the time it rendered its decision," *Moore v. Liberty Life Assur. Co. of Boston,* 129 F.Supp.3d 408, 411 nt. 2 (W.D. Va. 2015); *citing Stump v. Wachovia Group Long Term Disability Plan*, Civil Action No. 7:13–cv–00462, 2014 WL 4923223 at *9 (W.D. Virginia, September 30, 2014); *Webster v. Black & Decker (U.S.) Inc.*, 33 Fed. App'x 69, 74 n. 6 (4th Cir. 2002) (declining to consider Social Security Administration benefits determination letter that was not part of the administrative record). Plaintiff has not made the required showing with respect to any of the additional evidence upon which she attempts to rely. Therefore, it may not be considered by the Court.

By submitting and relying upon thirty-six additional pages of "evidence" Plaintiff only highlights the weakness of the evidence in the record to support her claim. All of the new evidence can be summarized as follows: (1) Lyme disease may cause significant symptoms (Dkt. ##29-2, 29-3, 29-4, 29-5); and, (2) fatigue can be a safety concern in aviation (Dkt. #29-6). The exhibits do nothing to suggest that Plaintiff actually experienced symptoms, including fatigue, which qualified her for disability benefits beyond July 23, 2012. The PBAC's decision to deny benefits relied on the opinion of the "clinical authority" and reports from two of Plaintiff's treating providers that Plaintiff's insomnia had resolved. (AR-0037, 0533). The decision to deny Plaintiff's claim was based on substantial evidence and must be affirmed.

## V.   CONCLUSION

For all of these reasons, Defendant respectfully requests that this Court issue an order granting its Cross-Motion for Summary Judgment and denying the Plaintiff's motion for summary judgment.

Dated:    October 20, 2017

Respectfully submitted,

**LITTLER MENDELSON, P.C.**

/s/ Daniel W. Srsic
Daniel W. Srsic  (OH #0064177)
    (admitted *pro hac vice* 01/05/2017)
21 East State Street, 16th Floor
Columbus, OH  43215
Telephone:    614.463.4213
Facsimile:    614.573.9812
E-mail:        dsrsic@littler.com

S. Libby Henninger  (Fed. Bar No. 17389)
815 Connecticut Avenue, N.W., Suite 400
Washington, DC  20006
Telephone:    202.772.2527
Facsimile:    202.315.3345
E-mail:        lhenninger@littler.com

*Counsel for Defendant American Airlines,*
    *Inc. Pilot Long-Term Disability Plan*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 20th day of October, 2017, I filed the foregoing *Defendant's Reply in Support of its Cross-Motion for Summary Judgment* with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Charles F. Fuller, Esq.
McCHESNEY & DALE, P.C.
4000 Mitchellville Road #222
Bowie, MD  20716
chuck@dalelaw.com
*Counsel for Plaintiff Leslie R. Vetter*


/s/ Daniel W. Srsic
Counsel for Defendant

Firmwide:150769808.2 076301.1007
10/20/17