**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **LESLIE R. VETTER,** | * | |
| Plaintiff, | * | |
| v. | * | Case No.: PWG-16-2833 |
| **AMERICAN AIRLINES, INC. PILOT LONG-TERM DISABILITY PLAN,** | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

In a comprehensive Memorandum Opinion and Order in this Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, action, I denied the cross-motions for summary judgment filed by Plaintiff Leslie Vetter, a pilot for American Airlines, Inc., and Defendant American Airlines, Inc. Pilot Long-Term Disability Plan ("the Plan"), the employee benefit plan that American Airlines, Inc. sponsored and which was administered by the Pension Benefits Administrative Committee (the "Plan Administrator"). ECF No. 31. I observed that "[t]he Plan Administrator initially denied the benefits on July 31, 2012," but then, when Vetter appealed, the Plan Administrator issued a letter on August 12, 2013, "award[ing] her benefits of $12,795.79 for the period from May 3, 2012 through July 23, 2012, but determined that benefits were not appropriate after July 23, 2012 because Vetter no longer was disabled." *Id*. at 1 (citing Administrative Record ("AR") 57–69, 158–62, ECF No. 21). I noted that the Plan Administrator "did not address benefits between February 22, 2012, when Vetter stopped receiving pay, and May 3, 2012." *Id.* I concluded that the Plan's decision not to award benefits before May 3, 2012 or after July 23, 2012 was not supported by substantial evidence and therefore an abuse of discretion.

*Id.* at 27. Because I also found that the onset and duration of Vetter's disability was not clear on the record before me, I remanded this case for further proceedings before the Plan Administrator. *Id.* at 27–28.[1]

Now pending is the Plan's Motion for Reconsideration, ECF No. 32.[2] The Plan challenges my conclusions regarding its decision not to award benefits before May 3, 2012 and its decision not to award benefits after July 23, 2012. Defs.' Mem. 6–8. Because it would be manifestly unjust not to revise my conclusion regarding benefits before May 3, 2012, as the parties now have explained that Vetter was not entitled to such benefits, I will grant the motion in part. But, I will deny it as to benefits after July 23, 2012, as the Plan has not demonstrated a basis for granting it.

## **Standard of Review**

Rule 54(b) governs motions for reconsideration of non-final orders, *see Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1472 (4th Cir. 1991), such as the March 5, 2018 Memorandum Opinion and Order remanding the case to the Plan Administrator, *see Dickens v. Aetna Life Ins. Co.*, 677 F.3d 228, 232 (4th Cir. 2012) ("[T]here is simply no basis for treating an order remanding a benefits determination to an ERISA claims administrator differently from a remand order to a federal administrative agency—which, as a general proposition, constitutes a non-final, non-appealable decision"). It provides that such an order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Id.*

---

[1] I set out the factual and procedural background of this litigation in that Memorandum Opinion.

[2] The parties fully briefed the Motion. ECF Nos. 32, 39, 40. A hearing is not necessary. *See* Loc. R. 105.6.

2

The Fourth Circuit has not stated a standard for review of a Rule 54(b) motion, but it has said that, "generally at least, a review of an interlocutory order under Rule 54 is not subject to the restrictive standards of motions for reconsideration of final judgments under Rule 60." *Fayetteville Investors*, 936 F.2d at 1472; *see also Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003). Nor is the standard for Rule 59(e) binding on review under Rule 54. *See Am. Canoe Ass'n*, 326 F.3d at 514; *Cezair v. JPMorgan Chase Bank, N.A.*, No. DKC-13-2928, 2014 WL 4955535, at *1 (D. Md. Sept. 30, 2014). Nonetheless, "courts frequently look to these standards for guidance in considering such motions." *Cezair*, 2014 WL 4955535, at *1; *see also Peters v. City of Mt. Rainier*, No. GJH-14-955, 2014 WL 4855032, at *3 n.1 (D. Md. Sept. 29, 2014) (looking to Rule 60(b) standard); *Harper v. Anchor Packing. Co.*, No. GLR-12-460, 2014 WL 3828387, at *1 (D. Md. Aug. 1, 2014) (looking to Rule 59(e) standard); *Potter v. Potter*, 199 F.R.D. 550, 552 n.1 (D. Md. 2001) (applying Rule 59(e) standard). A Rule 59(e) motion "need not be granted unless the district court finds that there has been an intervening change of controlling law, that new evidence has become available, or that there is a need to correct a clear error or prevent manifest injustice." *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 411 (4th Cir. 2010). Rule 60(b) provides overlapping, but broader, bases for relief from a court order, including that there has been "mistake, inadvertence, surprise, . . . excusable neglect[,] . . . newly discovered evidence[,] . . . fraud . . . , misrepresentation, or misconduct"; that "the judgment is void" or "has been satisfied"; or "any other reason that justifies relief." Fed. R. Civ. P. 60(b).

In keeping with these standards, this Court has held that "[a] motion for reconsideration is appropriate to 'correct manifest errors of law or fact or to present newly discovered evidence,' or where there has been an intervening change in controlling law." *Potter*, 199 F.R.D. at 552 n.1 (citations omitted). It "is not a license for a losing party's attorney to get a second bite at the apple." *Id.* at 552–53 (quoting *Shields v. Shetler*, 120 F.R.D. 123, 126 (D. Co. 1988)). These

3

"rules of constraint . . . make sense when a district court is asked to reconsider its own order" because "'[w]ere it otherwise, then there would be no conclusion to motions practice, each motion becoming nothing more than the latest installment in a potentially endless serial that would exhaust the resources of the parties and the court—not to mention its patience." *Pinney v. Nokia, Inc.*, 402 F.3d 430, 452–53 (4th Cir. 2005) (quoting *Potter*, 199 F.R.D. at 553).

### **Benefits Before May 3, 2012**

The Plan asserts that "May 3, 2012 is the date on which LTD benefit payments began—it is not the date on which Plaintiff was first found to be disabled." Def.'s Mem. 6. It explains:

> Under the terms of the Plan, there is a waiting period from the date a disability is found to have begun to the date LTD benefit payments commence:
>
>> "Elimination Period" means the period between the Pilot Employee's date of Disability and the date disability benefit payments commence under the Plan. The benefits shall commence ninety (90) days after the onset of the Disability or related Disability or on the expiration of paid sick leave and/or vacation, whichever occurs later; provided that there has been and continues to be qualified medical care consistent with the nature of the illness or injury.

*Id.* Indeed, Plaintiff had alleged that "[t]he Plan states that benefits will begin after a claimant satisfies the waiting/elimination period and will continue until the claimant is no longer 'Disabled' under the terms of the plan or the claimant reaches the maximum duration of the benefit." Compl. ¶ 25, ECF No. 1. But, neither party in any of their briefing had defined the "elimination period" or stated that it prevented Vetter from collecting disability benefits before May 3, 2012. *See* Cross-Mots. & Mems., Opp'ns & Replies, ECF Nos. 23, 23-1, 26, 29, 30. Given that they now both make clear that Plaintiff was not entitled to disability benefits before May 3, 2012 because the elimination period had not ended, *see* Def.'s Mem. 6–7; Pl.'s Opp'n 6 & n.1, I now conclude that the Plan correctly decided not to award benefits to Vetter for the period before May 3, 2012. In this regard, Defendant's Motion for Reconsideration is granted, as it would be manifestly unjust

to award benefits to which the parties agree Vetter was not entitled under the undisputed terms of the Plan. *See* Fed. R. Civ. P. 54(b); *Robinson*, 599 F.3d at 411; *Potter*, 199 F.R.D. at 552 n.1.

### **Benefits After July 23, 2012**

As for Vetter's entitlement to disability benefits after July 23, 2012, the Plan's motion does not identify any change in the law, clear error, or fraud, or meet even the more relaxed Rule 54 criteria for granting a motion for reconsideration. Rather, the Plan argues that because there was substantial evidence (already before me) that Vetter's insomnia did not affect her ability to perform her job as a pilot as of July 23, 2012, I erred in concluding that the Plan Administrator could not overlook evidence that her disability lingered just a few weeks later, in mid-August, to find that her disability had ended July 23, 2012. Def.'s Mem. 7–8. Specifically, I found:

> A careful review of the physicians' opinions that the parties cite, as well as those on which MES relied, from *after* July 23, 2012 reveals that they uniformly noted that Vetter had fatigue and difficulty sleeping in August 2012. Some opined in August 2012 or later that Vetter could not perform her duties as a pilot; none affirmatively stated that she could. For example, Dr. Shaller noted Vetter's "[s]evere and profound fatigue[,] [d]aily headaches [and] [s]leep disturbances" on August 20, 2012; concluded that these conditions were "undermining her ability to safely perform her duties as a pilot"; and "doubt[ed] that she [could] safely perform her duties as a pilot of a large commercial aircraft before four months." Shaller Ltr., AR 245–46, 248. On August 22, 2012, Dr. Kessler noted that he had "seen Ms. Vetter th[a]t day and ha[d] deferred examination for a First Class Medical [Certificate]" because she was "symptomatic and [wa]s unable to function as a flight officer until therapy [was] completed and she ha[d] recovered." Kessler Note, AR 611. Dr. Posorske noted that Vetter's fatigue and "extreme difficulty in sleeping" persisted on August 27, 2012. Posorske Ltr., AR 602. On August 16, 2012, Dr. Stern "noted some slight improvement in her symptoms" of fatigue and difficulty sleeping, but did not address whether she improved enough to be able to work. Stern Ltr., AR 554, 556. Additionally, Dr. Corrigan reviewed Vetter's medical records on September 6, 2012, and found that Vetter's condition at that time "prohibited [her] from exercising the privileges of her Airman's Medical Certificate." AR 614.
>
> And, while the independent physician consultants, Drs. Sims and Butler, noted that Vetter "had improvement of this problem" of "persistent, severe insomnia" based on Dr. Turrisi's July 23, 2012 letter, they also noted that "other medical evidence indicate[d] persistence of insomnia and fatigue [in] August 2012[]," based on Dr. Posorske's letter. Sims Review, AR 81. They opined that

5

> "persistent fatigue, wake time somnolence, and insomnia" were "conditions [that] disabled her from performing her work satisfactorily," as "[h]er medical record abundantly documents that she was not able to function as a flight officer because she . . . had somnolence, impaired concentration, and fatigue associated with poor nocturnal sleep." *Id*. Notably, they did not state that after July 23, 2012, she no longer was "disabled . . . from performing her work satisfactorily." *See id*. Indeed, the Plan has not identified *any* evidence that, after July 23, 2012, Vetter did not have sleep difficulties that rendered her unable to perform her duties as a pilot.

Mem. Op. & Order 21–23. I concluded that the Plan abused its direction because, "despite this uncontradicted evidence that Vetter's disability persisted after July 23, 2012, the Plan concluded that 'her insomnia markedly improved by July 23, 2012,' and that, '[w]hile she still experienced periodic episodes of insomnia after that time, the condition was self-limiting and responded to conservative treatment.'" *Id.* at 23 (quoting Aug. 12, 2013 Ltr., AR 69). I reasoned that the Plan

> did not explain the basis for its beliefs that, after July 23, 2012, her insomnia was still "markedly improved," that her insomnia was confined to "periodic episodes" and that it was "self-limiting and respon[sive] to conservative treatment." . . . Nor d[id] the Plan [on summary judgment] identify evidence in the record in support of its conclusion. The Fourth Circuit has held that it is an abuse of discretion for a plan administrator to reach a conclusion regarding disability benefits that is contrary to all of the relevant evidence before it. . . .

*Id.* In sum, I found that "the evidence that Vetter was disabled under the Plan after July 23, 2012 was uncontradicted, yet the Plan concluded that she was no longer disabled" based on opinion from physicians who "only addressed her status in June or July 2012" and not the later period at issue (because they provided their opinions before the period began). *Id.* at 25–26.

Certainly, the Plan Administrator may find on remand that the presence of Vetter's insomnia in mid-August 2012 was a recurrence after it had resolved as of July 23, 2012, if there is evidence in support of that conclusion. Or it may find that the insomnia simply did not qualify as a disability after July 23, 2012, if the evidence supports that conclusion instead. But, based on the record before me, the Plan Administrator abused its discretion because, as I said, the Plan did not identify evidence in support of or provide an explanation for any such conclusion. Therefore, the

Memorandum Opinion was not in error, and the Plan will not be given a second bite of the apple. In this regard, its Motion for Reconsideration is denied.

**ORDER**

For the reasons stated in this Memorandum Opinion and Order, it is, this 31st day of January, 2019, hereby ORDERED that

1. Defendant's Motion for Reconsideration, ECF No. 32, IS GRANTED IN PART AND DENIED IN PART as follows:

   a. With regard to the period before May 3, 2019, the motion is granted, and I now conclude that the Plan correctly decided not to award benefits to Vetter for the period before May 3, 2012 because the elimination period had not ended and therefore Plaintiff was not entitled to disability benefits before May 3, 2012;

   b. With regard to the period after July 23, 2012, the motion is denied, and the case is remanded to the Plan Administrator for further proceedings.

                                                                          /S/
                                                  Paul W. Grimm
                                                  United States District Judge